IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HENRY COMPANY HOMES, INC.,

     Plaintiff,

v.                                     Case No. 3:07cv288/LAC/EMT

CHRISTOPHER A. CURB,

     Defendant.

_____/

## ORDER OF SUMMARY JUDGMENT

Pending before the Court is Defendant Christopher A. Curb's Motion for Summary Judgment and documents in support thereof (Docs. 5-8, 32). Plaintiff Henry Company Homes, Inc., timely filed a memorandum and evidentiary materials in opposition (Docs. 11, 17). The Court has taken the matter under advisement (Doc. 10) and is now prepared to rule on Defendant's motion. For the reasons stated below, Defendant's Motion for Summary Judgment is granted.

# I. BACKGROUND

Plaintiff brings its second amended complaint against Defendant Christopher A. Curb, who at all times relevant to the complaint was employed as an Engineer for Escambia County, Florida. The complaint alleges a violation of Plaintiff's rights to due process and equal protection under 42 U.S.C. § 1983, based on Defendant's alleged role in denying building permits to Plaintiff. This case was originally raised in state court, but because this lone remaining claim raised a federal question, Defendant removed it.

The facts of the case trace back to a 2002 civil action for injunctive and declaratory relief (Case No. 2002-CA-000942) filed in Escambia County by Plaintiff and other developer companies over the fact that the County had denied or withheld building permits in four different residential subdivisions. A bench trial was held on August 18-19, 2003, and February 2-3, 2004, and the court entered its Final Judgment on December 30, 2004.

The County withheld from Plaintiff building permits for the subdivisions because improvements to certain infrastructure within the subdivisions were not completed at the time by the other developers. However, the Court found it impermissible for the County to have denied the building permits for the reasons it did so. First, the court essentially disapproved of the County's practice of approving the subdivisions conditionally, in turn accepting a guarantee from the developer that the described improvements would be made. Doc. 17, ex.3. While the court postulated that such conditional approval was simply not provided for

in the County Land Development Code (LDC)[1], it went on to hold that, because the guarantees should be deemed entered into at the time of the conditional approval and recording of the plats (and not after the subsequent inspection and approval of the improvements), these guarantees had expired at the time the building permits were denied. The court therefore found that the unfulfilled guarantees could not be the basis of the permit denial, for to do so would allow the County to withhold permits indefinitely.  The court rested its decision on the wording of the guarantees, the plats, and the LDC provisions.  *Id.* at 6-7.  In doing so, the court noted that then Deputy County Attorney Janet Lander had taken the position ultimately adopted by the court regarding the non-viability of conditional approval of subdivision improvements.

Furthermore, the court found that the LDC provided no authority for the County to withhold or deny permits to a builder such as Plaintiff because improvements to the subdivisions were not completed as per the guarantees.  While the court allowed that it was a logical and reasonable response for the County to want to halt further building or development until the improvements to the subdivision were complete, it nevertheless found no basis within the LDC for the County's action.  *Id.* at 7; *see also* doc. 17 at 18-19.  The County also asserted that, since Plaintiff and the plaintiff developer companies in the suit were all essentially owned by Edwin Henry, Plaintiff should be jointly responsible for the

---

[1]  One of the subdivisions, known as Coral Creek, was entered into the permitting process during the time that an older county ordinance was in effect, and consequently the court found it was not subject to the LDC.  Nonetheless, beyond the court's factual finding that the County was responsible for the upkeep for a pond in the subdivision, the ruling as to Coral Creek was substantially the same as the other subdivisions.

development of the subdivisions.   The court rejected this argument, finding that the

developers were solely responsible for the subdivisions.  *Id.*

The court then noted:

> The County has continued to deny building permits for the Magnolia
> Lakes Estates Phase IV Subdivision, taking the position that, until this Court
> entered a written, appealable final judgment on all outstanding issues, the
> stipulated interim order of May 16, 2002, controlled the building permit
> application process for the subdivision and that the court's oral pronouncement
> of its ruling on March 25, 2004, contained no direction to the County to refrain
> from denying building permits on the grounds that the subdivision
> improvements had not been accepted by its engineering department.  The
> Court's oral pronouncement of its rulings on March 25, 2004, did not contain
> an explicit direction to the County to refrain from denying such permits, and,
> therefore, the County could not be held in contempt for such denials.
> Nevertheless, the Court intended that its oral pronouncement would remove,
> as an impediment to the issuance of building permits, the position taken by the
> County that subdivision improvements had not been accepted by its
> engineering department.  During the period of this litigation, the County,
> through its engineering department, has delayed or denied building permits
> without sufficient justification or legal cause, based upon its position that it is
> entitled to withhold such permits in the subject subdivisions until certain
> actions are accomplished by the developers.  As a result, the Plaintiff . . . has
> suffered and is continuing to suffer irreparable harm from the County's failure
> and refusal to properly and timely issue building permits to it.  Based upon the
> County's position throughout this litigation and the announced intentions of
> its agents and employees, the Court concludes no adequate remedy at law
> exists for [the Plaintiff] other than a permanent injunction against the County.

*Id.* at 10-11.

Plaintiff subsequently filed a civil suit for damages against Defendant in state court,

based on 1) tortious interference with advantageous business relationships; 2) willful, illegal

and malicious actions in participating in and causing the denial of building permits; and 3)

violation of Plaintiff's rights to due process under the Florida Constitution. The Court denied

all three counts, the second count without prejudice to amending it to state an actionable claim.  In so holding, the court noted that in the first litigation it was undisputed that Defendant was acting as an employee of and spoke on behalf of the Engineering Department of the County when he recommended denial of the building permits.  See doc. 4, ex. 19 at 3.  The court also found from the undisputed material facts that Defendant "acted within the scope of his employment and at the direction of his supervisors and employers."  *Id.* at 4. Plaintiff then amended the complaint to include the instant claims under section 1983, which prompted removal of the complaint.

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  *Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  "[T]he substantive law will identify which facts are material" and which are irrelevant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  *See id.*

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See id.* at 249, 106 S. Ct. at 2510–11. A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S. Ct. at 2511. "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512).

**B. Qualified Immunity**

In conjunction with the summary judgment motion, Defendant claims entitlement to qualified immunity.  To assert qualified immunity, a government official must show that he was acting within his discretionary authority when he took the allegedly unconstitutional actions.  *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-1264 (11th Cir. 2004); *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (2003).  "If, interpreting the evidence in the light most favorable to the plaintiff, the court concludes that the defendant was engaged in a discretionary function, then the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Holloman*, 370 F.3d at 1264.  Plaintiff's burden is to show that the defendant violated his constitutional rights and that those rights were clearly established at the time.  *Id.*

Plaintiff first contests Defendant's ability to show that he was engaged in a discretionary function at the time of the alleged violation.  To determine whether government officials have acted within their discretionary authority, the court must ascertain whether their actions were a part of the performance of their official duties and within the scope of their authority.  *Id.* at 1265-1266 (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n. 17 (11th Cir.1994)).  The court should "ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* at 1265.  Furthermore:

> In applying each prong of this test, we look to the general nature of the
> defendant's action, temporarily putting aside the fact that it may have been

committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.

Consider the first prong of the test-whether the official is engaged in a legitimate job-related function. In *Sims v. Metropolitan Dade County*, 972 F.2d 1230 (11th Cir. 1992), "we did not ask whether it was within the defendant's authority to suspend an employee for an improper reason; instead, we asked whether [the defendant's] discretionary duties included the administration of discipline." Similarly, in assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities. Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description.

Of course, we must be sure not to characterize and assess the defendant's act at too high a level of generality. Nearly every act performed by a government employee can be described, in general terms, as ostensibly "furthering the public interest." If we jump to such a high level of abstraction, it becomes impossible to determine whether the employee was truly acting within the proper scope of his job-related activities. Consequently, we consider a government official's actions at the minimum level of generality necessary to remove the constitutional taint. In considering whether an act of allegedly excessive force fell within a police officer's duties, for example, we do not ask whether police have the right to use excessive force. We also do not immediately jump to a high level of generality and ask whether police are responsible for enforcing the law or promoting the public interest. We instead ask whether they have the power to attempt to effectuate arrests.

After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second prong of the test and determine whether he is executing that job-related function-that is, pursuing his job-related goals-in an authorized manner. The primary purpose of the qualified immunity doctrine is to allow government employees to enjoy a degree of protection only when exercising powers that legitimately form a part of their jobs. Each government employee is given only a certain "arsenal" of powers with which to accomplish her goals. For example, it is not within a teacher's official powers to sign her students up for the Army to promote patriotism or civic virtue, or to compel them to bring their property to school

to redistribute their wealth to the poor so that they can have firsthand experience with altruism.

Employment by a local, county, state, or federal government is not a carte blanche invitation to push the envelope and tackle matters far beyond one's job description or achieve one's official goals through unauthorized means. Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity.

*Id.* at 1266-67.

It is uncontroverted that Defendant, an Engineer II, was acting under the direction of the County Engineer when taking action relative to the permits in question. Specifically, Plaintiff maintained the duty of preparing and reviewing "punch lists" which detailed the results of inspections of the subdivision improvements. Defendant would then recommend to the Building Official whether building permits should be accepted or denied in those subdivisions. Additionally, Defendant's actions were overseen and ratified by both the County Engineer and the Board of County Commissioners.[2] Thus, Defendant performed precisely the duties assigned to him, and this is ample demonstration that Defendant was acting within the bounds of his delegated authority.

Plaintiff argues that Defendant acted in excess of authority because under Florida law, the evaluation of building permits are the exclusive domain of "building officials," but to demonstrate this he cites only to Florida Statutes, Section 468.604 (2002), which outlines the duties of building code inspectors. Plaintiff points out that the statute requires that

---

[2] Plaintiff contests that the Board does not generally participate in this process but did so in this instance.

building officials perform their responsibilities "without interference from any person." This hardly establishes that Defendant was acting beyond his delegated authority, particularly given that he only made recommendations to building officials regarding the permits.[3] Plaintiff also asserts that, because Defendant participated in the state legal proceedings as the county's designated representative, this somehow evidenced that he was he was the true force behind the denial of the permits, which again was in excess of his authority. However, this assertion does no more than suggest that the County delegated to him this particular duty, perhaps because of his knowledge of the case. It certainly does not show in and of itself that Defendant had any greater role or influence than that which was already described.

Plaintiff also contends that Defendant was not acting within his discretionary authority because he employed unlawful means that were therefore not within his legitimate power to utilize.[4] Plaintiff asserts: 1) Defendant wrongly denied building permits based on an invalid retroactive application of a new County Ordinance which ostensibly would have given the County the explicit power to deny the building permits because of the infrastructure shortcomings in the subdivisions; 2) Defendant continued to deny permits based on the

---

[3] Although Florida courts have yet to address this particular statutory provision, it is apparent to the Court that the aim of the provision is to prevent building officials from engaging in corrupt practices, not to prevent the sort of deliberative or administrative process among local government officials that is at issue here.

[4] It is noted the following arguments basically assume that Defendant was in the seat of authority to grant or deny building permits himself, a proposition that Plaintiff has failed to establish. Nonetheless, the Court will address these arguments, and conclusions drawn should be construed to mean that, to the extent that Defendant had the decision-making authority or otherwise participated in the denial of permits, he did not act in excess of his authority.

subdivision problems despite advice from Janet Lander to the contrary; and 3) Defendant continued to deny permits after the state court's oral ruling on March 25, 2004.

Plaintiff asserts that these three instances evince a stubborn refusal on the part of Defendant to take corrective action in regard to the permits and therefore was performing his job in an unauthorized manner. This argument is precisely what the Eleventh Circuit rejected in *Holloman*. Essentially, Plaintiff's argument is that Defendant's decision to deny permits was contrary to the applicable law. As *Holloman* directs, the Court is to remove the constitutional taint from Defendant's actions, that is, to remove the fact that Defendant might have misapplied the law or made use of laws which were inapplicable to the situation at hand. Removing this taint, the Court finds that Defendant was still performing within the contours of his employment function, that is, he was still doing his job in relation to the building permits. That Lander might have advised against Defendant's course of action does not thereby cause his action to become beyond his authority; if anything, it proves the opposite, since Lander evidently saw her role as only to advise, and not to displace his authority. Equally, while the state court's March 25, 2004, oral pronouncements might have weighed against the County as far as its rationale for denying the permits, the court itself recognized that it did not explicitly direct the County to refrain from granting the permits, and it declined to hold the County in contempt for such refusal. Thus, while after full resolution of the legal issues Defendant's position with regard to the permits might have turned out to be invalid, this does not render Defendant's actions illegitimately beyond the

scope of his employment duties.[5]  The Court therefore finds that Defendant was acting within his discretionary authority when he took the allegedly unconstitutional actions.

## C. Discussion of Claims

Accordingly, the burden now shifts to Plaintiff to show that Defendant is not entitled to qualified immunity.  To do this, Plaintiff must establish that 1) its constitutional rights were violated and 2) that those rights were clearly established at the time of the alleged violation.  *Holloman*, 370 F.3d at 1264.  It is well settled that "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  Therefore, this court must first determine whether the facts, read in the light most favorable to Plaintiff, establish that Defendants' actions amounted to a deprivation of any constitutional rights.[6]

---

[5]  As the Supreme Court has found, unless a governmental official is in clear violation of statute or regulation that specifically confers a cause of action that would be actionable as a civil rights violation, the officials does not lose qualified immunity simply because he or she violates a statute or regulation.  *See Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019 (1984).  There is no such regulation or statute involved here that creates a civil rights cause of action.

[6]  Title 42, United States Code, Section 1983 provides remedies for the deprivation of rights by government actors.  The statute states:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

If the answer is yes, the court must then decide whether those rights were clearly established at the time of the events alleged by Plaintiff. *See McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). In analyzing whether a right was clearly established, the Court should consider whether pre-existing law at the time of the alleged acts provided fair warning to Defendant that his actions were unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002). If it would be clear to any reasonable officer in the same situation that his actions were unconstitutional, then qualified immunity is not available, but if "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Thus, with these standards in mind, the Court will discuss each of Plaintiff's three constitutional claims in turn.

1. Equal Protection

Plaintiff first claims a violations of its rights to equal protection under the Fourteenth Amendment. As is evident, Plaintiff does not raise its equal protection claim based on its membership in any protected class. The Supreme Court has recognized that an equal protection violation can be proven even if the plaintiff comprises a "'class of one' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of*

*Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000);

*see also Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1559 (11th Cir.1991). "The purpose

of the equal protection clause of the Fourteenth Amendment is to secure every person within

the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned

by express terms of a statute or by its improper execution through duly constituted agents.

*Id.* at 564, 120 S.Ct. 1074-74.  However, an equal protection violation is not found simply

because a regulation or actions taken pursuant to that regulation are "bad or foolish."  *See*

*Williams v. Pryor*, 240 F.3d 944, 952 (11th Cir. 2001).  Thus, it is not enough to show that

the government action was "ineffective or even destructive.  Rather, [the action] "must

eliminate any reasonably conceivable state of facts that could provide a rational basis for the

classification."  *Bell v. Duperrault*, 367 F.3d 703, 708 (7th Cir.2004) (quotation omitted).

This poses a "very significant burden" to meet.  *Id.*  Additionally, courts generally require

that there be some sort of personal animus beneath the government's actions.  *See Bell*, 367

F.3d at 709-13 (Posner, J. concurring) (collecting cases); *Ritzel v. Milwaukee County*, 103

Fed.Appx. 7, 8, 2004 WL 1435216, *2 (7th Cir. Jun 23, 2004); *Shipp v. McMahon*, 234 F.3d

907, 916 (5th Cir. 2000), *overruled on other grounds*, 305 F.3d 314 (5th Cir. 2002); *Hayden*

*v. Grayson*, 134 F.3d 449, 454 (1st Cir. 1998); *see also Williams*, 240 F.3d at 951 n.4

(suggesting that laws that violate equal protection "raise the inevitable inference that the

disadvantage imposed is born of animosity toward the class of persons affected" (quoting

*Romer v. Evans*, 517 U.S. 620, 634, 116 S.Ct. 1620, 1628, 134 L.Ed.2d 855 (1996)) . "The

Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942-943, 59 L.Ed.2d 171 (1979).

The Court does not find that Plaintiff has demonstrated a violation of its rights to equal protection. While Plaintiff may attack the validity of Defendant's actions in denying the building permits, Plaintiff fails to show that it was singled out from others and disparately treated. Plaintiff does submit some evidence in letter form indicating that one other entity, King Ridge Developers, Inc. (Kings Ridge), was treated differently,[7] in that the County informed Kings Ridge that it would not deny building permits despite inadequacies in the improvements to the subdivision infrastructure. *See* doc. 17, exs. 7-11.[8] However, Plaintiff offers little in the way of particulars about the situation Kings Ridge or the subdivision developers were in at the time, the types or extent of the infrastructure problems that may have been present in that subdivision. Additionally, the decision with regard to Kings Ridge generally occurred years after the initial denial of permits in this case, although it did occur while this case was still pending in the state court.

---

[7] It should be noted that the Kings Ridge situation was not mentioned or even alluded to in the allegations of the second amended compliant, which may have effectively prevented Defendant from responding to Plaintiff's contentions in this regard.

[8] Instead, the County indicated that it would institute legal action against the subdivision developers if necessary.

"Class of one" plaintiffs may (just like other plaintiffs) fairly be required to show that their professed comparison is sufficiently apt." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007).  The two comparitors must be evaluated in light of all legitimate, objectively reasonable factors, and they must be found prima facie identical in all relevant respects. *Id.* at 1204 (citing *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006).  Plaintiff having failed to show this even by inference, the Court cannot conclude that the two entities are similarly situated.

Equally, Plaintiff fails to establish the absence of a rational basis for the difference in treatment.  Plaintiff attempts to show that Defendant's decision on the permits was inherently irrational because of his refusal to follow Janet Lander's advice that the permits should have been granted,[9] and because he continued to deny the permits after the state court's oral pronouncements on the issue.  As discussed above, the fact that a decision might seem imprudent does not make it irrational.  Defendant points out that it was the usual and oft-repeated practice of the County to conditionally grant permits.  The decision to deny building permits based on failures in the subdivisions, even if found to not comport with the language of the subdivision guarantees or the regulations as stated at the time, were not so far afield as to be deemed irrational.  *See Jeneski v. City Of Worcester*, 476 F.3d 14, 17 (1st Cir. 2007) (finding that a rationally-based decision does not violate equal protection simply because it violates a state statute) (quoting *Stern v. Tarrant County Hosp. Dist.*, 778 F.2d

---

[9] It is uncontroverted that Lander, while in an influential legal position within the County, had no supervisory authority over Defendant.

1052, 1054 (5th Cir. 1985)).  In fact, the state court found the County's practice to be unsupported but logical, and the County's later-enacted ordinance appears to codify this practice. *See F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315-316, 113 S.Ct. 2096, 2102-03 (1993) (noting that the practicalities of the legislative process may allow for some "mathematical" imprecision that results in inequality).  Similarly, to the extent that Defendant could be found to have applied the later ordinance retroactively to Plaintiff's permit requests, this might have been erroneous but not irrational.  Likewise, the County's failure to grant the permits immediately after oral proceedings in the state court can hardly be deemed irrational when that court itself recognized that its directives lacked the necessary explicitness.  Finally, the County's aim with its permitting procedures,[10] to insure that subdivision infrastructure was properly engineered before allowing further building, was in furtherance of legitimate objectives to monitor and control development within its jurisdiction.  *See generally Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1387 (11th Cir.1993) ("[T]he Supreme Court and this court have repeatedly held ... noise, traffic, congestion, safety, aesthetics, valuation of adjoining land, and effect on city services ... are rational and permissible bases for land use restrictions"; *Greenbriar Village, L.L.C. v. Mountain Brook, City*,  345 F.3d 1258, 1263 (11th Cir. 2003) ("The avoidance of the harms attendant to half-completed construction is a constitutionally permissible objective for a municipality when enforcing its building code").

---

[10]  Plaintiff raises no challenge that the County's procedures, in and of themselves, are not formed from legitimate governmental interests.

Even more importantly, it is neither claimed nor evidenced that Defendant in particular was involved in any way with the Kings Ridge decision.  Plaintiff can hardly show that Defendant treated similarly situated companies differently when he does not appear to have dealt with one of the companies at all.   Additionally, Plaintiff's assertion of discriminatory animus is based only upon the facts of the permit decisions themselves, leaving no other basis for the Court to find a discriminatory motive.  Plaintiff does describe Defendant's actions as "extortionate" or "malicious" but fails to identify any basis for this type of behavior other than the County's general motivation to control development, which the Court has already found rationally-based.  Though Plaintiff may rightly believe its legal position on the permit issues to be correct, this may show that Defendant acted improvidently, but not that he acted with discriminatory intent.

Having found that none of Plaintiff's bases for relief satisfy the elements for an equal protection claim, the Court finds that summary judgment should be granted against Plaintiff on this claim.


## 2.  Due Process

Plaintiff claims that Defendant's denial of permits constituted a substantive due process violation, but these types of claims have been all but eliminated in this circuit.  When a state-created substantive right is violated through executive or non-legislative governmental action, no federal violation exists "so long as the elements of procedural – not substantive

– due process are observed." *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994).  As

the Eleventh Circuit has explained:

> [N]on-legislative deprivations of state-created rights, which
> would include land-use rights, cannot support a substantive due
> process claim, not even if the plaintiff alleges that the
> government acted arbitrary and irrationally. Constitutional due
> process is satisfied for these deprivations when proper
> procedures are employed.
>                          . . .
> FN4. The point being that the claim that the government acted
> arbitrary and irrationally can be easily subsumed and, indeed, is
> more properly considered a part of a claim that improper
> procedures were used in the deprivation. Claiming that the
> interest was deprived arbitrarily or irrationally is equivalent to
> claiming that no fair, unbiased, and meaningful procedures were
> used for the deprivation. That type of inquiry falls squarely
> within what we have defined . . . as a procedural due process
> claim.

*Greenbriar Village*,  345 F.3d at 1263 (citations to *McKinney* omitted).

Nonetheless, even if it were assumed that Plaintiff could raise an actionable claim of

a substantive due process violation, it would fail.  This slender thread of caselaw generally

recognizes a substantive claim under due process for violative conduct so egregious that it

shocks the judicial conscience.[11]  *See McKinney*, 20 F.3d at 1556.  The conduct must reveal

an improper motive on the part of the government actor and decisions that were "pretextual,

arbitrary and capricious, and ... without any rational basis."  *Greenbriar, Ltd. v. City of*

---

[11]  Even here, the Eleventh Circuit indicated that this standard, derived from *Rochin v.
California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), arose in the context of criminal
law and thereby is inapplicable to a civil action for damages.  *McKinney*,  20 F.3d at 1556 n.7.

*Alabaster*, 881 F.2d 1570, 1577 (11th Cir. 1989) (quotations omitted).[12] This "rational basis"

standard is the same one employed for claims of equal protection. *See In re Wood*, 866 F.2d

1367, 1371 (11th Cir. 1989); *Grant v. Seminole County*, 817 F.2d 731, 735 (11th Cir. 1987).

As the Court has already undergone this analysis of Plaintiff's equal protection claim, the

holding remains the same with Plaintiff's claim of a substantive due process violation.

Plaintiff also asserts a violation of its right to procedural due process in the denial of

permits.  As recognized in *Greenbriar Village* and *McKinney*, *supra*, this is the more

appropriate avenue for due process relief.  The focus here is on whether the state procedures

used to redress injury or damage to the liberty or property interest were constitutionally

adequate.[13]  *See Greenbriar Village*,  345 F.3d at 1263.  Ordinarily, it is sufficient due

process for the affected party to be provided with notice and an opportunity to be heard.  *See*

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d

494 (1985).  Even where due process may initially be lacking, "the state may cure ... [that]

deprivation by providing a later procedural remedy; only when the state refuses to provide

a process sufficient to remedy the procedural deprivation does a constitutional violation

actionable under section 1983 arise." *McKinney*, 20 F.3d at 1557.  Hence, "a procedural due

---

[12]  Additionally, a substantive due process claim requires that the right allegedly violated be fundamental or "implicit in the concept of ordered liberty."  *C.B. By and Through Breeding v. Driscoll*, 82 F.3d 383, 387 (11th Cir. 1996) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)).  For the purposes of this discussion, the Court assumes, but does not decide, that Plaintiff is able to demonstrate that the denial of building permits is a sufficient property right to merit analysis under the substantive due process standard.

[13]  Again, for the purposes of this discussion, the Court assumes that Plaintiff had a protected property interest in the permits it sought.

process violation is not complete unless and until the State fails to provide due process." *Id.* (quoting *Zinermon v. Burch*, 494 U.S. 113, 123, 110 S.Ct. 975, 982, 108 L.Ed.2d 100 (1990)).

The record in this case clearly shows that Plaintiff took advantage of the procedural avenues of relief that were available in the state system and was in fact able to gain injunctive relief. Plaintiff argues that the state court, in its order granting a permanent injunction, found the relief available to Plaintiff to be "inadequate," but this was simply the Court's finding, as is a standard prerequisite for an award of injunctive relief, that Plaintiff had no adequate remedy at law. Doc. 17, ex.3 at 10-11. Plaintiff also complains about the delay in the process that culminated in the order, but delay by itself does not violate due process where the state courts are nonetheless available to provide relief. *See Bello v. Walker*, 840 F.2d 1124 (3d Cir. 1988); *Schafer v. City of New Orleans*, 743 F.2d 1086 (5th Cir. 1984); *Quinn v. Bryson*, 739 F.2d 8 (1st Cir. 1984); *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524 (1st Cir. 1983). Plaintiff may complain about Defendant's actions in defense against the state lawsuits, but due process requires only sufficient procedure, not a particular result. Accordingly, the Court does not find the avenues for redress available to Plaintiff to be procedurally lacking, and therefore no due process violation is found.

### III. SUMMARY

Accordingly, the Court finds that under summary judgment analysis Plaintiff has failed to establish a violation of its Fourteenth Amendment rights to equal protection or due process. It is therefore unnecessary to determine whether under qualified immunity analysis those rights were clearly established at the time.

The Court's ruling in this matter may be summarized as follows, and **IT IS HEREBY ORDERED:**

1.   Defendant Christopher A. Curb's Motion for Summary Judgment (Doc. 5) is **GRANTED**.

2.   Consistent with this order, the Clerk of Court is directed to enter summary judgment in favor of the Defendant. Plaintiff shall take nothing further by this action and goes without day.

3.   The Clerk is directed to close this case.

**ORDERED** on this 11th day of March, 2008.


_____ s/ L. A. Collier _____
Lacey A. Collier
Senior United States District Judge